IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Cox House Moving, Inc., on behalf of itself and all others similarly situated, | ) ) ) | CA No. 7:06-1218-HMH |
| Plaintiff, | ) ) | |
| vs. | ) ) | **OPINION & ORDER** |
| Ford Motor Company, | ) ) | |
| Defendant. | ) | |

This matter is before the court on Ford Motor Company's ("Ford") motion to dismiss Cox House Moving, Inc.'s ("Plaintiff") complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. For the reasons set forth below, Ford's motion is granted in part and denied in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is a putative class action lawsuit alleging a variety of claims which stem from the Plaintiff's purchase of a Ford F-550 Super Duty truck. The Plaintiff's claims are (1) breach of express warranty, (2) breach of an implied warranty of merchantability, and (3) negligence.

### A. Specific Allegations

On March 19, 2004, the Plaintiff purchased a 2004 Ford F-550 Super Duty Truck ("truck") with a 6.0-liter Power Stroke diesel engine ("engine"). (Compl. ¶ 8.) Soon after the Plaintiff purchased the truck, it began to experience problems with engine performance, including rough running, vehicle shuddering, reduction and loss of power, engine shut-down, leaking oil, and smoking. (Id.) Ford rebuilt the engine in the truck and ultimately replaced the

1

engine in January 2006.  (<u>Id.</u> ¶ 9.)  However, the Plaintiff alleges that the engine continues to

have problems.  (<u>Id.</u>)  Due to the engine problems, the Plaintiff has been unable to use the truck

for a total of four months.  (<u>Id.</u> ¶¶ 8-9.)

An express warranty was provided with the purchase of the truck, "which warranted that

Ford would repair, replace or adjust all parts on vehicles that are defective in factory-supplied

materials or workmanship."  (Compl. ¶ 11.)  However, the Plaintiff alleges that the problems

associated with the engine "are of an inherent and permanent nature" and "cannot be

satisfactorily corrected by repairs or replacement of parts to the engine."  (<u>Id.</u> ¶ 12.)  The

Plaintiff argues that these engine problems are not unique to the Plaintiff.  Moreover, the

Plaintiff asserts the engine problems will require the Plaintiff to incur substantial repair costs in

the future and significantly lower the truck's resale value.  (<u>Id.</u> ¶¶ 7, 13.)

## II. DISCUSSION OF THE LAW

### A. Dismissal Standard

In the United States District Court, the plaintiff must only state a "short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.

Dismissal of a complaint for failure to state a claim is proper "only if it can be said that on the

claim as pleaded the claimant can prove no set of facts that would entitle her to relief."

<u>Labram v. Havel</u>, 43 F.3d 918, 920 (4th Cir. 1995).  The court will treat factual allegations

of the nonmoving party as true.  <u>Estate Constr. Co. v. Miller & Smith Holding Co.</u>, 14 F.3d

213, 217-18 (4th Cir. 1994).

**B. Ford's Motion to Dismiss**

***1. Breach of Warranty***

Ford alleges that the Plaintiff's breach of warranty claim must be dismissed because the plaintiff "fails to identify an express warranty that has been breached" and fails to plead cognizable damages. (Def.'s Mem. Supp. Mot. Dismiss 6-10.) "The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514 (2002). A plaintiff must only "set forth facts sufficient to allege each element of his claim" to satisfy the pleading requirements of Rule 8(a). Slade v. Hampton Roads Reg'l Jail, 407 F.3d 243, 252 (4th Cir. 2005) (internal quotation marks omitted).

a. Breach of Express Warranty

Under South Carolina law, an express warranty is created in the following ways:

> (a) Any affirmation of fact or promise, including those on containers or labels, made by the seller to the buyer, whether directly or indirectly, which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods conform to the affirmation or promise.
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

S.C. Code § 36-2-313(1) (2003). "When goods do not conform to a promise or an affirmation of fact made by a seller, or the goods do not conform to a description, sample, or model, then a seller has breached an express warranty." Herring v. Home Depot, Inc., 565 S.E.2d 773, 776 (S.C. Ct. App. 2002) (internal quotation marks omitted).

3

Ford alleges that the Plaintiff has failed to identify an express warranty that has been breached. (Def.'s Mem. Supp. Mot. Dismiss 7-9.) Ford submits that the Plaintiff's allegations "demonstrate that Ford has complied with the [express warranty]" that was provided with the purchase of the truck and, therefore, no express warranty has been breached. (Id. 8.) The Plaintiff alleges that after the purchase of the truck, the engine began to experience problems with engine performance, including rough running, vehicle shuddering, reduction and loss of power, engine shut-down, leaking oil, and smoking. (Compl. ¶ 8.) Moreover, the Plaintiff's complaint alleges as follows:

> 9. As a result of the defective condition, the plaintiff has been required to have its truck repaired on numerous occasions but said problems have continued to exist. Because of said problems, plaintiff was without the use of its truck for approximately one-and-a-half months on one occasion while Ford was rebuilding the engine and in January 2006, Ford replaced the defective engine with another 6.0-liter Power Stroke diesel engine; however, the plaintiff has continued to have problems with the replaced engine.
>
> . . . .
>
> 11. Ford issued to the plaintiff and to purchasers of all Ford vehicles with similarly equipped 6.0-liter Power Stroke diesel engines a transferable written manufacturer's warranty, which warranted that Ford would repair, replace or adjust all parts on vehicles that are defective in factory supplied materials or workmanship. This warranty requires that repairs will be free of charge to the purchaser or any subsequent owner.
>
> 12. Notwithstanding the manufacturer's warranty given by Ford to the plaintiff and other purchasers of its vehicles, plaintiff believes the numerous problems which the plaintiff and the class have had with their vehicles are of an inherent and permanent nature which cannot be satisfactorily corrected by repairs or replacement of parts to the engine, fuel system and related components. Plaintiff also is informed and believes that Ford has refused to repair certain defects and problems relating to the turbocharger and other engine and/or fuel components under its warranty program, resulting in the owners having to personally incur these costs.

4

. . . .

21. Defendant Ford expressly warranted its vehicles equipped with the 6.0-liter Power Stroke diesel engine to be free of defects at the time of delivery.

22. Defendant Ford breached its express warranties by offering for sale, and selling as safe, Ford vehicles equipped with the 6.0-liter Power Stroke diesel engines that are, by design, defective and have premature failure and other mechanical complications, thereby causing damages to the plaintiff and Class Members in the form of, among other things, loss of use, additional expenses for repairs and diminution in fair market value.

23. As a direct and proximate result of Ford's breach of express warranty, plaintiff and the Class have suffered actual damages.

(Compl. ¶¶ 9, 11-12, 21-23.)  Ford alleges that the warranty acknowledges that the truck may have "defects in material and workmanship" and that the warranty states that Ford will repair defects for a period of time.  (Def.'s Mem. Supp. Dismiss 8-9.)  Ford argues that the warranty contains no language promising a defect-free truck.  (Id.)

In response, the Plaintiff states that Ford has mischaracterized Plaintiff's claim.  The Plaintiff alleges that its "claim is that it incurred expenses not covered by Ford pursuant to the express warranty that resulted from the defective materials and design of the engine and, in addition, despite Ford's efforts to repair or replace the defective materials, the repairs or replacements made by Ford still are defective."  (Pl.'s Mem. Opp'n Mot. Dismiss 3-4.)  After review of the allegations of the complaint, the court finds that the Plaintiff has adequately pled a claim for breach of an express warranty.  As such, Ford's motion to dismiss on this ground is denied.

5

b.  Damages

In addition, Ford argues that the Plaintiff has alleged no cognizable damages.  Ford alleges that the Plaintiff's complaint indicates that it has "been responsive under the warranty to every problem it has experienced with the truck."  (Def.'s Mem. Supp. Mot. Dismiss 10.) Further, Ford alleges that consequential and incidental damages are excluded in the warranty, which would bar the recovery of damages for loss of use of the truck, additional repair expenses, and diminution in the truck's resale value.  (Id. 10-11.)

The Plaintiff counters that it is entitled to recover damages because the warranty remedy of repair or replacement has failed of its essential purpose.  (Pl.'s Mem. Opp'n Mot. Dismiss 4.) "Under the South Carolina Uniform Commercial Code (UCC), it is clear that the parties to a contract may establish exclusive, limited written warranties and limitation of damages as a remedy for breach thereof."  Bishop Logging Co. v. John Deere Indus. Equip. Co., 455 S.E.2d 183, 190 (S.C. 1995).  South Carolina Code of Laws Section 36-2-719(1) provides that a warranty "may limit the buyer's remedies to repair or replacement of nonconforming goods or parts, and if such remedy is expressly agreed to be exclusive, it is the sole remedy."  Id. However, "[d]espite the exclusive remedy provisions in § 36-2-719," when a warranty's exclusive remedy fails of its essential purpose, "a party may . . . be entitled to the general remedies of the UCC."  Id.

The exclusive remedy in a warranty fails of its essential purpose "[w]here a seller is given a reasonable chance to correct defects and the [product] still fails to function properly." Id. at 191.  "In such circumstances, § 36-2-719(2) permits the buyer to pursue the other remedies provided by the UCC if the defect substantially affects the value of the buyer's bargain."  Id.

6

Further, "[s]ection 36-2-719(3) states that consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." Generally, "[u]nconscionability has . . . been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." Myrtle Beach Pipeline Corp. v. Emerson Elec. Co., 843 F. Supp. 1027, 1046 (D.S.C. 1993).

> Various factors guide the court in determining the unconscionability of excluding incidental and consequential damages, including (1) the nature of the injuries suffered by [plaintiff]; (2) whether [plaintiff] is a substantial business concern; (3) disparity in the parties' bargaining power; (4) the parties' relative sophistication; (5) whether there is an element of surprise in the exclusion; and (6) the conspicuousness of the clause.

Eaton Corp. v. Trane Carolina Plains, 350 F. Supp. 2d 699, 705 (D.S.C. 2004).

South Carolina Code of Laws section 36-2-714(2) provides that the "measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value that they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." The complaint alleges that the Plaintiff has suffered damages "in the form of, among other things, loss of use, additional expenses for repairs and diminution in fair market value." (Compl. ¶ 22.) Moreover, the Plaintiff alleges that it continues to have engine problems despite numerous attempts by Ford to repair the engine. (Id. ¶ 12.) Therefore, if the Plaintiff can prove that the limited remedy provided in the express warranty fails of its essential purpose or that the consequential and incidental damages exclusion is unconscionable, the Plaintiff may be able to recover damages pursuant to section 36-2-714. Based on the foregoing and after a review of

the Plaintiff's allegations, the court finds that the Plaintiff has adequately pled damages in the complaint.

In sum, the Plaintiff has alleged each element of a breach of express warranty, including the existence of an express warranty, breach of an express warranty, and damages proximately caused by the breach. <u>Besse v. General Motors Corp.</u>, 317 F. Supp. 2d 646, 654 n.7 (D.S.C. 2004). Therefore, Ford's motion to dismiss the breach of warranty claim is denied.

### *2. Implied Warranty of Merchantability*

Ford argues that the Plaintiff's claim for breach of the implied warranty of merchantability must be dismissed because (1) the Plaintiff has not alleged that the truck is unmerchantable, (2) the Plaintiff did not provide Ford notice of the alleged breach of the implied warranty, and (3) the Plaintiff has no cognizable damages. (Def.'s Mem. Supp. Mot. Dismiss 12-14.)

#### a. Allegations of Unmerchantability

South Carolina Code of Laws section 36-2-315 provides that "[u]nless excluded or modified under the next section (§ 36-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Section 36-2-314(2) provides that

[g]oods to be merchantable must be at least such as
(a) pass without objection in the trade under the contract description; and
(b) in the case of fungible goods, are of fair average quality within the description; and
(c) are fit for the ordinary purposes for which such goods are used; and
(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
(e) are adequately contained, packaged, and labeled as the agreement may require.

8

If an automobile will not run, the warranty of merchantability is breached. <u>Soaper v. Hope</u>

<u>Indus., Inc.</u>, 424 S.E.2d 493, 495 (S.C. 1992). The Plaintiff alleges that engine problems

prevented it from using the truck for a total of four months. (Compl. ¶¶ 8-9.) Further, the

Plaintiff alleges that the engine continues to have problems. Moreover, the complaint states as

follows :

> 27. Defendant Ford impliedly warranted to plaintiff and the Class Members the
> 6.0-liter Power Stroke diesel engine which it designed, manufactured, and sold to
> plaintiff and the Class passed without objection in the trade, was fit and
> merchantable for its ordinary use and was not otherwise injurious to consumers.
>
> 28. Because of the undisclosed defective nature of the 6.0-liter Power Stroke diesel
> engines during ordinary use, the Ford 6.0-liter Power Stroke diesel engines could
> not pass without objection in the trade, and [were] unsafe, unmerchantable and
> unfit for the ordinary use when sold, and were not adequately packaged and
> labeled.

(<u>Id.</u> ¶¶ 27-28.) Based on a review of the complaint, the Plaintiff has adequately pled that the

truck is unmerchantable. As such, Ford's motion to dismiss on this ground is denied.

### b. Notice to Ford

Second, Ford argues that the Plaintiff's claim for breach of the implied warranty of

merchantability must be dismissed because the Plaintiff has not alleged that it provided Ford

with notice of the breach of the implied warranty. (Def.'s Mem. Supp. Mot. Dismiss 12.) South

Carolina Code of Laws section 36-2-607(3)(a) provides that "the buyer must within a reasonable

time after he discovers or should have discovered any breach notify the seller of [the] breach or

be barred from any remedy." Section 36-2-607(3)(a) does not identify any "form for the

required notification." <u>United States v. S. Contracting of Charleston, Inc.</u>, 862 F. Supp. 107,

111 (D.S.C. 1994). As Ford recognizes, under the lenient standard, "any good faith

communication that reasonably notifies the seller that the buyer is troubled by the transaction should suffice to preserve the buyer's right to pursue UCC remedies in the event it suffers damages from the defect." Id. at 112.[1]  The court in Southern Contracting held that the seller had received sufficient notice because the seller "actually knew of the defects and the problems those defects were causing the buyer." Id.  The Plaintiff's complaint alleges that Ford made repeated repairs to the truck, and Ford retained possession of the truck for four months while attempting to repair the engine. (Compl. ¶¶ 8-9.)  Therefore, based on the allegations of the complaint, which the court must accept as true, Ford actually knew of the Plaintiff's truck's engine problems.  Hence, Ford's motion to dismiss the implied warranty of merchantability claim on this ground is denied.

c. Damages

Third, Ford contends that the Plaintiff has alleged no cognizable damages for breach of the implied warranty of merchantability.  Ford submits that the Plaintiff "has pled no facts indicating that it has ever spent any money to repair its vehicle," and that incidental and consequential damages are excluded in the warranty. (Def.'s Mem. Supp. Mot. Dismiss 13-14.) The court denies Ford's motion to dismiss on this ground because the Plaintiff has alleged cognizable damages as discussed above concerning the Plaintiff's damages allegations for breach of an express warranty.

---

[1]Although no South Carolina court has adopted either the lenient or strict notification standard, the court agrees with the holding in Southern Contracting that the lenient standard applies.  862 F. Supp. at 112.

### *3. Negligence*

Ford alleges that the economic loss rule bars the Plaintiff's negligence claim, and that

the Plaintiff fails to state a claim for negligence, gross negligence, or recklessness.  (Id.14-19.)

a.  Economic Loss Rule

The economic loss rule provides that

> Where a purchaser's expectations in a sale are frustrated because the product he
> bought is not working properly, his remedy is said to be in contract alone, for he
> has suffered only "economic" losses.  Conversely, where a purchaser buys a
> product which is defective and physically harms him, his remedy is in either tort or
> contract.

Bishop Logging Co. v. John Deere Indus. Equip. Co., 455 S.E.2d 183, 188 (S.C. Ct. App. 1995)

(internal quotation marks omitted).  The Plaintiff alleges that Ford was negligent in several

respects concerning the defective engine and seeks recovery of damages for "loss of use of said

vehicle, additional repair and replacement costs, and substantial diminution in fair market

value."  (Compl. ¶¶ 34.)  Hence, the Plaintiff seeks to recover economic losses.  However, the

Plaintiff also alleges that "because of the defective and unreliable nature of the engine, there is a

greater likelihood the engine will fail, lose power and/or cut-off during operation, thereby

resulting in accidents involving personal injury, deaths and property damages."  (Id. ¶ 13.)

The Plaintiff, citing City of Greenville v. W.R. Grace & Co., argues that the economic

loss rule does not bar a negligence claim where the "product threatens a substantial and

unreasonable risk of harm."  827 F.2d 975, 978 (4th Cir. 1987).  In Greenville, the plaintiff

alleged negligence against an asbestos fireproofing manufacturer for installing asbestos

fireproofing in the city hall in Greenville, South Carolina.  Id. at 976.  The Fourth Circuit held

that the plaintiff "should not be required to wait until asbestos-related diseases manifest

themselves before maintaining an action for negligence against a manufacturer whose product threatens a substantial and unreasonable risk of harm by releasing toxic substances into the environment." Id. at 978.  The Fourth Circuit noted that its "review of relevant South Carolina authority bolsters our conviction that the South Carolina courts would permit Greenville to assert a claim for the negligence of Grace under the facts of this case." Id.

South Carolina courts have not decided whether the economic loss rule applies to products that have the potential to cause harm.  The holding in Greenville has been limited to its specific facts, and the case concerned asbestos, which is an inherently dangerous, toxic substance.  See e.g. South Carolina Elec. & Gas Co. v. Westinghouse Elec. Corp., 826 F. Supp. 1549, 1556 (D.S.C. 1993) (distinguishing Greenville and noting that it "was decided within the unique realm of asbestos-litigation created law").

In Westinghouse, the District of South Carolina held that the economic loss rule barred the plaintiff's negligent design and manufacture claims concerning a nuclear power plant system.  Id.  The plaintiff alleged that "the product purchased did not perform as promised and in order to prevent future harm, the systems must be replaced." Id.  Distinguishing Greenville, the court noted that "[t]he focus of [Greenville] is not that the building owner has suffered an intangible economic loss, but that the asbestos-containing materials have contaminated the building, damaging property and posing a continual hazard to building occupants and workmen." Id. (internal quotation marks omitted).  The court found that

> [i]n the event the nuclear reactor system fails, there is a potential for public harm, not as a result of any public exposure to the [product] but for the potential exposure to radioactive products and by-products.  The [product] may need repair or replacement but there are no allegations that the defective product, the [product], has caused any latent personal injuries or that it is toxic standing alone.

12

Westinghouse, 826 F. Supp. 1556.  The court held that, "unlike *Greenville*, the plaintiffs' damages are the pure economic loss of having to replace product."  Id.

Further, other courts have declined to expand South Carolina tort law to recognize the exception to the economic loss rule that the Plaintiff urges.  In Colleton Preparatory Academy, Inc. v. Hoover Universal, Inc., the court refused to resolve the issue and instead certified the following question to the Supreme Court of South Carolina: "[m]ay a user of a defective product maintain a negligence action against the manufacturer when the resulting damage is limited to the defective product, if the product poses a serious risk of physical harm?"  412 F. Supp. 2d 560, 565 (D.S.C. 2006).  Similarly, in Bennett v. Ford Motor Co., the court recognized that expanding South Carolina tort law is "not the role of this court" and thus refused to recognize an exception to the economic loss rule for a breach of industry standards.  236 F. Supp. 2d 558, 562-63 (D.S.C. 2002).

The court finds the Westinghouse case instructive.  In the case at bar, as in Westinghouse, the Plaintiff is seeking to recover purely economic losses.  There is no allegation that the engine is inherently harmful or that the defect has caused any personal injuries.  As such, the Plaintiff cannot proceed with its negligence claim on the theory that the alleged product defect has the potential to cause physical injury.

In addition, the Plaintiff relies on Eaton Corp. v. Trane Carolina Plains, 350 F. Supp. 2d 699, 702 (D.S.C. 2004).  In Eaton Corp, the court noted that "[w]here there is a special relationship between the parties that is independent of the contract, . . . there exists a duty of care whose breach will support a tort action."  Id.  Further, "[t]he breach of an industry standard may establish that a special duty outside of the contract exists, and thus prevent application of

the economic loss rule." <u>Id.</u> at 702-03; <u>see also</u> <u>Bennett</u>, 236 F. Supp. 2d at 562 (noting that

"[i]t is not inconceivable that an argument could be made to extend the use of 'industry

standards' to create an additional exception to the economic loss rule); <u>but see</u> <u>Colleton</u>

<u>Preparatory Acad.</u>, 412 F. Supp. 2d at 563 (casting doubt on whether industry standards create

an exception to the economic loss rule).  The Plaintiff submits that it would be premature to

dismiss this cause of action on this basis because it has not had the opportunity to conduct

discovery on the industry standards.  The court disagrees.  No South Carolina court has found

that the violation of an industry standard can give rise to a special duty.  As such, under South

Carolina law, the breach of an industry standard is not an exception to the economic loss rule.

Based on the foregoing, the court grants Ford's motion to dismiss the Plaintiff's negligence

claim because it is barred by the economic loss rule.

### 4. *Recall*

Finally, Ford contends that the Plaintiff's request for a recall of the truck must be

dismissed because it is preempted by the National Traffic and Motor Safety Act ("Safety

Act"), 49 U.S.C. 30101 et seq.  (Def.'s Mem. Supp. Mot. Dismiss 19.)  The Plaintiff seeks

preliminary and permanent injunctive relief and requests that the court order Ford to recall

and replace all defective engines or repurchase all of the vehicles equipped with the engine.

(Compl. ¶ 37.)   Ford argues that "[t]he relief sought by Plaintiff would both frustrate the

accomplishment of a federal objective and the congressional purposes in enacting the Safety

Act, and trespass in an area of law that is so thoroughly regulated that it is clear that Congress

left no room for the states to supplement it."  (Def.'s Mem. Supp. Mot. Dismiss 19-20.)

"Whether federal law preempts state law-based judicial authority to order a tire or motor

14

vehicle recall is a legal issue, not a factual one." In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig., 153 F. Supp. 2d 935, 940 (S.D. Ind. 2001).

"Federal courts have held that conflict preemption applies to prevent the judiciary from ordering vehicle recalls as a remedy in a court action." In re Ford Motor Co. Crown Victoria Police Interceptor Prods. Liab. Lit., No. 1:02 CV 15000, 2004 WL 1170145, at *18 (N.D. Ohio May 19, 2004) (unpublished); see also In re Bridgestone, 153 F. Supp. 2d at 948 ; Lilly v. Ford Motor Co., No. 00 C 7372, 2002 WL 84603, at *5 (N.D. Ill. Jan. 22, 2002) (unpublished); Bussian v. DaimlerChrysler Corp., 411 F. Supp. 2d 614, 629 (M.D.N.C. 2006) (noting that "requesting a court-ordered recall or retrofit" is "relief which is clearly within the special competence of the NHTSA"). The court agrees that a court-ordered recall is preempted by the Safety Act.

"The Safety Act . . . sets forth a comprehensive scheme for prospective relief from dangerous features in vehicles." In re Bridgestone, 153 F. Supp. 2d at 944. "[T]he Safety Act affords the Secretary [of Transportation] much discretion to determine the need for notification or remedy of a defect or failure to comply with safety regulations." Id. "The detail contained in the Safety Act suggests a clear congressional intent to limit encroachment on the agency's work." Id. Moreover, "[t]he breadth of the [Secretary's] statutory discretion suggests a congressional intent to limit judicial interference with the agency's work regarding recalls." Id. (internal quotation marks omitted). Based on the foregoing, the Plaintiff's request for injunctive relief in the form of a court-ordered recall is dismissed because it is preempted by the Safety Act.

Therefore, it is

**ORDERED** that Ford's motion to dismiss, docket number 7, is denied in part and granted in part.

**IT IS SO ORDERED.**

s/Henry M. Herlong, Jr.
United States District Judge

Greenville, South Carolina
August 8, 2006