IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

Cox House Moving, Inc., on behalf            )
of itself and all others similarly situated,    )    CA No. 7:06-1218-HMH
                                              )
              Plaintiff,                      )
      vs.                                     )
                                              )    **OPINION & ORDER**
Ford Motor Company,                           )
                                              )
              Defendant.                      )

This matter is before the court on Cox House Moving, Inc.'s ("Plaintiff") motion for class certification. For the reasons set forth below, the Plaintiff's motion is denied.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

This is a putative class action lawsuit alleging claims for breach of express warranty and breach of the implied warranty of merchantability which stem from the purchase of Ford vehicles equipped with a 6.0-liter Power Stroke diesel engine.[1]

**A. Specific Allegations**

On March 19, 2004, the Plaintiff purchased a 2004 Ford F-550 Super Duty Truck ("truck") equipped with a 6.0-liter Power Stroke diesel engine ("engine"). (Compl. ¶ 8.) Soon after the Plaintiff purchased the truck, it began to experience problems with engine performance, including rough running, vehicle shuddering, reduction and loss of power, engine shut-down, leaking oil, and smoking. (Id.) Ford rebuilt the engine in the truck and

---

[1] The court dismissed the Plaintiff's negligence and injunctive relief claims in a written order dated August 8, 2006.

1

ultimately replaced the engine in January 2006. (Id. ¶ 9.) However, the Plaintiff alleges that the engine continues to have problems. (Id.) Due to the engine problems, the Plaintiff has been unable to use the truck for a total of four months. (Id. ¶¶ 8-9.)

The Plaintiff alleges that the engine is defective. An express warranty was provided with the purchase of the truck "which warranted that Ford would repair, replace or adjust all parts on vehicles that are defective in factory-supplied materials or workmanship." (Compl. ¶ 11.) However, the Plaintiff alleges that the problems associated with the engine "are of an inherent and permanent nature" and "cannot be satisfactorily corrected by repairs or replacement of parts to the engine." (Id. ¶ 12.) The Plaintiff argues that these engine problems are not unique to the Plaintiff. In addition to the problems with the Plaintiff's engine, the Plaintiff submits that other individuals have experienced problems with the engine including problems with "the fuel system, fuel injectors, oil leaks, broken turbochargers, wiring harness troubles, faulty sensors, defective exhaust gas recirculation valves, and faulty computers." (Pl.'s Mem. Supp. Mot. Class Certification 3.) Moreover, the Plaintiff asserts that the engine problems will require the Plaintiff and other putative class members to incur substantial repair costs in the future and will significantly lower the vehicle's resale value. (Id. ¶¶ 7, 13.)

## II. DISCUSSION OF THE LAW

### A. Class Certification

"One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the

representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  In reviewing a motion for class certification, the court must first determine whether the requirements of Rule 23(a) are met before examining those set forth in Rule 23(b).  See Lukenas v. Bryce's Mountain Resort, Inc., 538 F.2d 594, 596 (4th Cir. 1976).

"The party seeking class certification bears the burden of proof." Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir. 2001).  Furthermore, a court has "broad discretion in deciding whether to certify a class." Id.  "At this stage, the class representative need not establish its case on the merits." Parks Auto. Group, Inc. v. Gen. Motors Corp., No 05-1504, 2006 WL 2384728, at *2 (D.S.C. 2006).  However, "the district court must take a close look at the facts relevant to the certification question and, if necessary, make specific findings on the propriety of certification." Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 319 (4th Cir. 2006) (internal quotation marks omitted).  "Such findings can be necessary even if the issues tend to overlap into the merits of the underlying case." Id.  However, "[t]he likelihood of the [plaintiff's] success on the merits . . . is not relevant to the issue of whether certification is proper." Id.

### 1. Rule 23(a)

### a. Numerosity

As to Rule 23(a)'s numerosity requirement, there is no specific number needed to maintain a class action.  See Brady v. Thurston Motor Lines, 726 F.2d 136, 145 (4th Cir. 1984) (internal quotations marks omitted).  Instead "an application of the rule is to be considered in light of the particular circumstances of the case." Id.  Ford does not contest

that the Plaintiff is able to satisfy the numerosity requirement. Hence, the court finds that the Plaintiff has met the numerosity requirement.

### b. Commonality and Typicality

"Commonality requires that there are questions of law or fact common to the class." Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir. 2001) (internal quotation marks omitted). "The common questions must be dispositive and over-shadow other issues." Id. In contrast, "[t]ypicality requires that the claims of the named class representatives be typical of those of the class; a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Id. (internal quotation marks omitted).

The Fourth Circuit has recognized that the commonality, typicality, and adequacy of representation requirements of Rule 23(a) "tend to merge, with commonality and typicality serv[ing] as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Id. at 147 (internal quotation marks omitted).

"A question is not common . . . if its resolution turns on a consideration of the individual circumstances of each class member. Parks, 2006 WL 2384728, at *3 (internal quotation marks omitted). Further, "[t]he commonality test is qualitative, not quantitative." Id. The law requires that "[t]here need be only a single question of law or fact common to all members of the class. However, the existence of any common question is insufficient because at a sufficiently abstract level of generalization, almost any set of claims can be said to display

commonality." Id. (internal quotation marks omitted). "What [the court looks] for is a common issue the resolution of which will advance the litigation." Id.

In the memorandum in support of its motion, the Plaintiff lists the following twelve allegedly common questions of law and fact:

(1) whether the 6.0-liter Power Stroke® diesel engines in the vehicle purchased by Plaintiff and the Class are defective and subject to premature failure in the course of their normal use;

(2) whether Ford knew of the defective nature of the subject engines;

(3) whether the 6.0-liter Power Stroke® diesel engines are unreasonably defective in that, among other things, they have a propensity to prematurely fail, including losing power and/or cutting-off while still in motion;

(4) whether Ford had a duty to Plaintiff and the Class to disclose the defective nature of the 6.0-liter Power Stroke® diesel engines;

(5) whether the facts concealed and/or otherwise not disclosed by Ford to Plaintiff and the Class are material facts;

(6) whether as a result of Ford's concealment and/or failure to disclose material facts, Plaintiff and the Class acted to their detriment by purchasing vehicles containing the defective 6.0-liter PowerStroke® diesel engines;

(7) whether Ford knew or should have known the 6.0-liter PowerStroke® diesel engines are defective, would prematurely fail, and thus that the vehicles equipped with these engines were not suitable for the purposes for which they were intended to be used, and otherwise are not as warranted and represented by Ford;

(8) whether Ford owed and breached a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the design, testing, manufacturing, marketing and sale of the 6.0-liter Power Stroke® diesel engines;

(9) whether the 6.0-liter Power Stroke® diesel engines are not as advertised and/or promoted by Ford;

(10) whether Ford breached its duties to Plaintiff and the Class by failing to replace the 6.0-liter Power Stroke® diesel engines with a product that was free from defects and/or take other appropriate remedial action;

(11) whether Plaintiff and the Class are entitled to compensatory damages and the amount of such damages; and

(12) whether Ford should be declared financially responsible for notifying all Class Members of the nature of the defective 6.0-liter Power Stroke®

>    diesel engines and for the cost and expenses of such buy back,
>    reimbursement, and replacement of said engines and/or the vehicles.

(Pl.'s Mem. Supp. Mot. Cert. 11-12.)  The putative class claims hinge on the argument that the engine is defective.

The Plaintiff alleges that this "proposed class action seeks damages against Defendant, Ford, for breach of express and implied warranty arising from the production of a defective 6.0 liter PowerStroke diesel engine." (Id. 2.)  However, the Plaintiff has failed to allege a specific, common defect(s) in the engine that causes the problems that allegedly plague the engine.  The Plaintiff has experienced problems with engine performance, including rough running, vehicle shuddering, reduction and loss of power, engine shut-down, leaking oil, and smoking.  (Compl. ¶ 8.)  Further, although the Plaintiff's truck engine has not experienced all of the following problems, the Plaintiff alleges that the engine also suffers from other problems including problems with "the fuel system, fuel injectors, oil leaks, broken turbochargers, wiring harness troubles, faulty sensors, defective exhaust gas recirculation valves, and faulty computers."  (Pl.'s Mem. Supp. Mot. Cert. 3.)  The Plaintiff has provided the following affidavits to support its motion for class certification:

1. Affidavit of Fred Najim ("Najim"), general manager for the Plaintiff, who opines about the problems he has experienced with the truck (Pl.'s Reply Supp. Mot. Certification Ex. 1 (Najim Aff. generally).);
2. Affidavit of Carla Morrison ("Morrison"), an owner of a vehicle with the engine who has experienced many of the same problems as the Plaintiff (Id. Ex. 2 (Morrison Aff. 1-3).);
3. Affidavit of Richard Fleming ("Fleming"), a former parts and service director with Vic Bailey Ford, who opined that at Vic Bailey Ford, the engine was second in service problems to the Firestone tire issue" (Id. Ex. 3 (Fleming Aff. 1-2).);
4. Affidavit from David F. Merrion ("Merrion"), a retired executive vice president in engineering for Detroit Diesel Corporation, who reviewed

6

    certain documentation and opined that "some components [of the engine] exhibited characteristics of a design defect while others were unreliable as designed" (Id. Ex. 3 (Merrion Aff. 2).);

5.  Affidavit of Don Henderson ("Henderson"), a former Ford Senior Master Technician who worked on more than 100 engines and has seen problems similar to those experienced by the Plaintiff (Id. Ex. 5 (Henderson Aff. 1-3).); and

6.  Affidavit of Jerry Martin ("Martin"), owner of Jerry's Auto Sales, who stated that due to the engine's poor reputation he refuses to purchase any Ford truck equipped with the engine. (Pl.'s Reply Supp. Mot. Certification Ex. 6 (Martin Aff. 1-2).)

The affidavits submitted by the Plaintiff do not allege any common engine defect and instead opine that the engines suffer from various problems and have a poor reputation. The Plaintiff argues that "[o]n information and belief, Ford has acknowledged there are serious design defects with these engines and attempted to redesign certain aspects of the engine, including purchasing back numerous F-Series trucks." (Pl.'s Mem. Supp. Mot. Cert. 3.) The Plaintiff has provided documentation that Ford has had higher warranty repair rates with the engine, has issued numerous technical service bulletins addressing certain warranty repair issues with some vehicles equipped with the engine, and that consumer complaints have been made to the National Highway Transportation Administration asserting various problems consumers have had with the engine. (Id. Ex. 1 (Consumer Complaints) & Ex. 2 (Technical Service Bulletins).) However, the Plaintiff does not allege any theory to explain what is causing the alleged problems with the engine, i.e. what common defect(s) exist in the engine.

  The court agrees that at the class certification stage, the Plaintiff is not required to prove that a common defect exists in the engine. However, the Plaintiff must allege that common engine defect(s) exist in order to establish commonality among the putative class members. Walsh v. Ford Motor Co., 130 F.R.D. 260, 269 (D.D.C. 1990) (finding that to

obtain class certification, the plaintiffs "must present credible classwide proof that the Ford vehicles in question suffered from some common defect . . .").

Further, even if the court assumes that the engine has a common defect, the court would be forced to make individualized inquiries concerning the use, maintenance, and service history of each class member's vehicle to determine whether the common defect exists in each class member's engine and whether each class member has a cognizable warranty and implied warranty claim.

Based on the varied nature of the alleged problems, which span seven different systems in the engine, in order to determine whether Ford breached the express warranty and the implied warranty of merchantability due to a common engine defect, each engine will need to be examined. The problems that the Plaintiff alleges exist in the engine could be caused by any number of things, including how the vehicle is used and maintained. In addition, the vehicles will have different service histories. "Courts are hesitant to certify classes in litigation where individual use factors present themselves, such as cases involving allegedly defective motor vehicles and parts. The administrative burdens are frequently too unmanageable for a class action to make sense in such cases." Sanneman v. Chrysler Corp., 191 F.R.D. 441, 449 (E.D. Pa. 2000). This is not a case involving a "single failure event or a simple, fungible product." Id. at 450. Instead, the Plaintiff alleges that the engine suffers from various problems involving numerous systems in the engine.

In addition, the proposed class spans four model years and includes all Ford vehicles with the engine. Ford has made extensive running and calibration changes to the engine over this time period. Therefore, the engine has been modified. Despite the Plaintiff's argument,

the modifications to the engine over the four-year time period are significant and could affect the operation of the engine.

Moreover, it is unclear how many vehicles with the engine are experiencing problems. The Plaintiff attaches complaints about the engine. However, Ford has provided evidence of positive feedback from owners of vehicles with engines that have no problems. (Def.'s Mem. Opp'n Cert. Exs. E, F, & G (Customer Testimonials).) Hence, it is unclear how many of Ford's vehicles equipped with this engine are experiencing problems. The Plaintiff's proposed class includes all current and previous owners of Ford vehicles with the engine for the model years 2002 to 2006, irrespective of whether the class member has ever experienced any problems with the engine. "The question arises . . . whether a breach of warranty claim can ever be stated with respect to a product that in service performs precisely as it was represented it would, although others presumably identical to it have failed." Barbarin v. Gen. Motors Corp., No. 84-0888, 1993 WL 765821, at *2 (D.D.C. 1993); see Briehl v. Gen. Motors Corp., 172 F.3d 623, 628 (8th Cir. 1999) (finding that "[w]here . . . a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies" for breach of warranty or breach of implied warranty of merchantability); see Carlson v. Gen. Motors Corp., 883 F.2d 287, 289 (4th Cir. 1989) (buyers could not assert Magnuson-Moss implied warranty of merchantability claim for damages caused by "poor reputation" of GM diesel engines and lost resale value of cars in the absence of a manifest defect).

Further, the commonality requirement is not satisfied "unless all litigants are governed by the same legal rules." In re Bridgestone/Firestone, Inc. Tires Products Liab. Litig., 288 F.3d 1012, 1015 (7th Cir. 2002). The Plaintiff argues that a choice of law analysis is not

9

required because every state except Louisiana has adopted the Uniform Commercial Code ("UCC"), which applies to the class claims for breach of express warranty and breach of the implied warranty of merchantability. However, "certification of a nationwide class in which the law of 50 states, rather than federal law, must be identified and applied, places the burden upon [the] plaintiff[] to credibly demonstrate, through an extensive analysis of state law variances, that class certification does not present insuperable obstacles." In re Ford Motor Co. Ignition Switch Products Liab. Litig., 174 F.R.D. 332, 340 (D.N.J. 1997) (internal quotation marks omitted).

The Plaintiff has failed to analyze the differences in the law. Under South Carolina's choice of law rules for UCC claims, the appropriate relation test is applied to determine which state's law applies. S.C. Code Ann. § 36-1-105(1). The "majority of courts . . . has defined appropriate relation in accord with the dominant trend in modern conflict of laws analysis, under which the law of the state with the most significant relationship to the matter at issue is applied." In re Merritt Dredging Co., 839 F.2d 203, 206 (4th Cir. 1988) (internal quotation marks omitted). Under the most significant relationship test, the court considers the following factors in determining which jurisdictions' laws applies:

- (a) the needs of the interstate and international systems,
- (b) the relevant policies of the forum,
- (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
- (d) the protection of justified expectations,
- (e) the basic policies underlying the particular field of law,
- (f) certainty, predictability and uniformity of result, and
- (g) ease in the determination and application of the law to be applied.

10

Restatement (Third) of Conflict of Laws §§ 6, 244 (1971). Applying these factors, it is apparent that in a nationwide class, the court would have to apply the laws of 51 jurisdictions. The Plaintiff's argument that a choice of law analysis is unnecessary because the UCC applies is insufficient to prove that common questions of law exist. The interpretation of the UCC is based on each state's courts' interpretation. See Walsh, 130 F.R.D. at 273 (noting that the court's analysis does not stop at the UCC language because "the Court must examine how courts interpret and apply the [UCC] standard and what defenses will overcome it"). In addition, as Ford notes, there are other variances among the jurisdictions including requirements for privity of contract and notice of breach of the express and implied warranty. Based on the foregoing, the Plaintiff has failed to meet its burden of establishing commonality. Moreover, for the reasons discussed above, the Plaintiff has failed to meet the burden of showing that its claim is typical of other class members.

### c. Adequacy of Representation

In order to satisfy the adequacy of the representation requirement, the Plaintiff must be able "fairly and adequately to protect the interests" of the class members. Talley v. ARINC, Inc., 222 F.R.D. 260, 268-69 (D. Md. 2004). "This inquiry involves two issues: (i) whether [the] plaintiff[] ha[s] any interest antagonistic to the rest of the class; and (ii) whether [the plaintiff's] counsel [is] qualified, experienced and generally able to conduct the proposed litigation." S.C. Nat'l Bank v. Stone, 139 F.R.D. 325, 330 (D.S.C. 1991) (internal quotation marks omitted). The adequacy inquiry "serves to uncover lack of common interests between named parties and the class they seek to represent." Talley, 222 F.R.D. at 269. The Plaintiff "must be part of the class and possess the same interest and suffer the same injury as the class

members." Broussard v. Meineke Discount Muffler Shops, Inc.,155 F.3d 331, 338 (4th Cir. 1998) (internal quotation marks omitted).

No party disputes the ability of the Plaintiff's counsel to represent the class. "The adequacy of [the plaintiff's] counsel . . . is presumed in the absence of specific proof to the contrary." South Carolina Nat'l Bank, 139 F.R.D. at 330-31. Therefore, the court finds that the second inquiry has been satisfied. With respect to the first inquiry, Ford alleges that the Plaintiff is not an adequate representative. For the reason discussed in the commonality and typicality section, the Plaintiff has failed to meet its burden of showing that it would fairly and adequately represent the proposed class because there is insufficient evidence that the class members have suffered the same or similar injury as the Plaintiff.

### 2. Rule 23(b)

Although the Plaintiff has failed to satisfy the requirements of Rule 23(a), even if the court assumes that the Rule 23(a) requirements have been met, the Plaintiff has failed to satisfy the requirements of Rule 23(b). The Plaintiff argues that class certification is required under Rule 23(b)(1)(A), which provides that "the prosecution of separate actions by or against individual members of the class would create a risk of . . . inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." "Rule 23(b)(1)(A) is designed to prevent situations in which different courts would establish incompatible standards of conduct for the party opposing class certification." Feinstein v. Firestone Tire and Rubber Co., 535 F. Supp. 595, 600 n.5 (S.D.N.Y. 1982). In contrast, Ford alleges that Rule 23(b)(3), not (b)(1)(A), applies. Ford argues that the Plaintiff's motion to certify must be

denied because the Plaintiff cannot satisfy the requirements of Rule 23(b)(3). Rule 23(b)(3) requires that the court find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

The court agrees with Ford because, in the instant action, the Plaintiff seeks to "recover money damages for class members, not to regulate [Ford's] conduct. The only effect of inconsistent decisions would be the payment of damages to some claimants but not to others, an inadequate basis for Rule 23(b)(1)(A) certification." Feinstein, 535 F. Supp. at 600 n.5. Hence, the court will apply Rule 23(b)(3).

### a. Predominance

First, under Rule 23(b)(3), the court must determine whether questions of law and fact common to the putative members of the class predominate over any questions affecting individual members. As discussed above, the court has already found that the Plaintiff has failed to meet the less stringent commonality requirement of Rule 23(a). See Lienhart v. Dryvit Systems, Inc., 255 F.3d 138, 146 n.4 (4th Cir. 2001) ("In a class action brought under Rule 23(b)(3), the commonality requirement of Rule 23(a)(2) is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over other questions." (Internal quotation marks omitted).

Based on the reasons discussed in the commonality and typicality section above and for the reasons set forth below, the court finds that questions of law and fact plainly do not predominate over the questions affecting individual members. The Plaintiff has failed to allege a common defect in the engine. In addition, the engine has undergone extensive

running and calibration changes during 2002 to 2006. (Def.'s Mem. Opp'n Mot. Cert. Ex. D. (Aff. Dan Lingg ¶¶ 7-14).) Moreover, even assuming the existence of a common defect, each engine would have to be examined individually to determine whether that defect caused the problems present in each individual engine. See e.g., Barbarin v. General Motors Corp., 1993 WL 765821 (finding that common questions of fact did not predominate in part because each class member would be "obliged to show independently that his or her vehicle was defective when purchased, or, in other words, that its aberrant performance upon being braked resulted from factors intrinsic to the braking system design and/or construction, and not from environmental conditions, or neglected maintenance, or driver error").

Further, the Plaintiff would have to prove the extent of any damage to each vehicle caused by any alleged defect. The court recognizes that the existence of differing damages awards does not preclude the certification of a class under Rule 23(b)(3). However, the Plaintiff has failed to come forward with any proposal establishing "a manageable way of assessing the recovery for each potential class member . . . ." In re Gen. Motors Corp., "Piston Slap" Products Liab. Litig., No. MDL 04-1600, 2006 WL 1049259, at *10 (W.D. Okla. Apr. 19, 2006) (noting that "[a]ssuming the plaintiffs can determine whose vehicles have the alleged defect, they then have to prove, likely on a vehicle by vehicle basis, which ones have been damaged"). Assessing damages would require each engine to be examined.

In addition, as discussed, the class claims would have to be decided under the laws of 51 jurisdictions. The Plaintiff has failed to offer any argument concerning how the divergent law and individual causation issues could be managed by this court. See Chin v. Chrysler Corp., 182 F.R.D. 448, 454-55 (D.N.J. 1998) (finding that common legal and factual issues

did not predominate as the Plaintiffs failed "to demonstrate a suitable and realistic plan for trial of the class claims which arise under the differing laws of the 50 states as well as the District of Columbia and Puerto Rico," and the plaintiffs "failed to show how they would deal with the individualized causation issues").

### b. Superiority

Second, Rule 23(b)(3) requires that the "class action is superior to other available methods of fair and efficient adjudication of the controversy." The four factors set forth in Rule 23(b)(3) that the court considers in making this determination are:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

In the present case, the critical consideration in determining whether the proposed class action satisfies the superiority requirement is manageability. As discussed above, to adjudicate the class claims would require individualized inquiries regarding causation and damages. Further, "[b]ecause these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable." In re Bridgestone/Firestone, Inc., 288 F.3d at 1018. The court finds that the Plaintiff has failed to meet its burden of showing that class treatment is superior because certification of the proposed class "will not advance the efficiency and economy of litigation which is a principal purpose of the procedure." In re Gen. Motors Corp., 2006 WL 1049259, at *11 (internal quotation marks omitted).

Therefore, it is

**ORDERED** that the Plaintiff's motion for class certification, docket number 13, is denied.

**IT IS SO ORDERED.**

                                                   s/Henry M. Herlong, Jr.
                                                   United States District Judge

Greenville, South Carolina
November 6, 2006